788 So.2d 635 (2001)
STATE of Louisiana
v.
Lawrence RAINES.
No. 00-KA-1941.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*637 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Joan S. Benge, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
James A. Williams, Kevin V. Boshea, Michelle H. Hesni, Davidson S. Ehle, III, Gretna, LA, for Defendant-Appellant.
Panel composed of Chief Judge EDWARD A. DUFRESNE, JR., Judges CLARENCE E. McMANUS and JAMES L. GULOTTA, Pro Tem.
DUFRESNE, Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Lawrence Raines, with distribution of cocaine, in violation of LSA-R.S. 40:967 A. The matter proceeded to trial before a twelve person jury, at the conclusion of which defendant was found guilty as charged. Defendant thereafter filed a motion for new trial which was heard and denied. Following this denial, defendant indicated that he was ready for sentencing. The trial judge then sentenced him to ten years at hard labor without benefit of parole, probation, or suspension of sentence. The court ordered that the sentence run concurrently with the sentences imposed in two other cases. Defendant now appeals.

FACTS
Agent Corey Wilson, a narcotics officer with the Jefferson Parish Sheriff's Office, *638 testified that he organized an undercover narcotics investigation in the area of Robinson Street in Marrero after his department received several complaints from "concerned citizens." On September 15, 1998, Frank Williams[1] was assigned to make undercover drug buys in that area. Wilson and other officers waited nearby to assist Williams in the event there was a threat to his safety. Williams's car was fitted with a concealed video camera and audio equipment, so that each transaction could be recorded. Williams was also given two ten-dollar bills with which to purchase narcotics. Those bills were photocopied by the officers prior to their use.
Williams testified that he drove to Robinson Street, where defendant and two other subjects were standing. Williams stopped his car and asked one of the men (not defendant) where he could get a "20," the street term for twenty dollars worth of crack cocaine. Defendant then went into a house across the street. He returned with an off-white, rock-like object. Williams paid defendant with twenty dollars in marked money and defendant handed over the rock. The transaction was recorded by the audio and video equipment.
After completing the transaction, Williams met the surveillance officers at a pre-arranged location. Agent Wilson performed a field test on the substance Williams had purchased. The test was positive for cocaine.
Wilson took the videotape of the transaction to his office, where he played it for Sergeant Ronnie Hoefield. Williams gave Sergeant Hoefield a description of defendant, including what he was wearing at the time of the transaction. Hoefield then went to Robinson Street, where he spotted a man who matched the description. The officer conducted an investigatory stop, at which time he asked to see defendant's driver's license. He learned the man's name was Lawrence Raines, and that the subject resided at 302 Robinson Street. Hoefield did not detain defendant at that time, because to do so would have compromised the undercover operation.
Sergeant Hoefield gave Agent Wilson defendant's personal information. Based on Hoefield's identification, Wilson compiled a photographic lineup and included in it a picture of defendant. Wilson showed the lineup to Williams on October 2, 1998, and Williams immediately identified defendant as the man from whom he had purchased the crack. On October 29, 1998, Wilson obtained a warrant for defendant's arrest for distribution of cocaine. The warrant was executed in June, 1999, when the sheriffs department performed a roundup of all those who had sold drugs to the undercover officer in the course of the operation.
Edgar Dunn, an expert in the field of testing and analysis of controlled dangerous substances, testified that he performed chemical analysis on the rock sold by defendant. The substance was positive for cocaine base. Dunn further testified that the total weight of the crack was .23 grams.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the trial court's denial of his motion to suppress identification.
Defendant filed a pre-trial motion to suppress identification, alleging that the identification procedure was impermissibly suggestive, in violation of his constitutional *639 rights. At the December 14, 1999 suppression hearing, Agent Corey Wilson, a narcotics officer with the sheriffs office for ten years, testified that, on September 15, 1998, an undercover agent purchased crack from a man on Robinson Street. The transaction was videotaped. Wilson showed the videotape to other narcotics agents and instructed them to be on the lookout for a suspect whose appearance matched that of the man in the tape. Sergeant Hoefield located the subject in the Robinson Street area and learned his name was Lawrence Raines.
Based on Hoefield's identification, Wilson compiled a photographic lineup. Wilson showed undercover officer Frank Williams the videotape of the transaction to "refresh his memory." He then presented the lineup to Williams. In only seconds, Williams was able to identify defendant as the person from whom he had bought crack cocaine on September 15, 1998. Wilson testified that he did not give Williams any indication as to which photograph he should select, nor did he promise anything or threaten Williams in order to extract an identification. Wilson stated he produced the lineup photographs by computer, so that they would look as much alike as possible. During the motion hearing, defense counsel argued that the photographic lineup was suggestive because the other subjects included in the lineup bore no resemblance to defendant. The trial judge commented that one subject had lighter skin than defendant, but that the other five subjects looked similar to each other. The trial judge then denied the motion to suppress. Defendant now challenges this denial, asserting that the identification procedure was suggestive.
A defendant challenging an identification procedure must prove to the court that it was suggestive and that there was a substantial likelihood of misidentification. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Pugh, 99-851 (La.App. 5 Cir. 12/21/99), 750 So.2d 313, writ denied, 00-0206 (La.8/31/00), 766 So.2d 1273. Even if the identification procedure is found to be suggestive, this alone does not violate due process, as it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Every, 96-185 (La.App. 5 Cir. 7/30/96), 678 So.2d 952.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630. Finally, in evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, supra. In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, *640 but may also consider pertinent evidence given at trial. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. The decision to deny a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Baker, 00-1050 (La. App. 5 Cir. 11/16/00), 776 So.2d 1212.
In the present case, the testimony at the suppression hearing revealed that undercover officer Williams was shown the videotape of the transaction immediately prior to being shown the photographic lineup. At trial, Williams admitted that he picked defendant from the lineup based primarily on what he saw in the videotape, and not on his independent recollection of the transaction. We also note that the photographic lineup was not shown to Williams until October 2, 1998, eighteen days after the transaction involving defendant. These factors lead us to conclude that the identification procedure was, in fact, suggestive. However, that does not end our inquiry. We must now determine whether there was a substantial likelihood of misidentification.
Having reviewed the factors set forth in Manson v. Brathwaite, supra, as well as the totality of the circumstances, we find that there was not a substantial likelihood of misidentification, and thus, the trial court did not err in denying defendant's motion to suppress identification. The transaction at issue took place during daylight hours. Since Williams came face-to-face with the man who sold him crack, he had the opportunity to see the subject's features at the time of the offense. Williams testified at trial that when the subject walked across the street to retrieve the crack cocaine, he was able to radio a description of the man to the surveillance officers. The videotape shows that the subject was wearing a plaid shirt, as described by Williams to the backup officers. After hearing Williams's description and watching the videotape of the transaction, Sergeant Hoefield was able to locate the subject that day and identify him as Lawrence Raines. Additionally, the fact that the transaction was recorded on videotape greatly reduces any risk of misidentification. We also note that the videotape was played for the jury at trial, and defense counsel was given the opportunity to cross-examine Agent Williams regarding the validity of his identification.
Given these circumstances, we find that there was not a substantial likelihood of misidentification, and therefore, the trial court did not err in denying defendant's motion to suppress.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him of distribution of cocaine. Defendant specifically contends that the state failed to prove his identity as the perpetrator.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604. To prove distribution of cocaine, the state must show that the defendant knowingly or intentionally distributed cocaine, a dangerous substance classified in Schedule II. LSA-R.S. 40:967 A; State v. Alexander, 98-1377 (La.App. 4 *641 Cir. 2/16/00), 753 So.2d 933. Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Zeno, 99-69 (La.App. 5 Cir. 8/31/99), 742 So.2d 699.
To prove identification in this case, the state produced the photographic lineup from which Agent Williams selected defendant. Williams also positively identified defendant in court. At trial, Sergeant Hoefield testified that he confirmed Williams's initial description of the perpetrator when he found defendant in the Robinson Street area shortly after the transaction took place. Defendant's plaid shirt and blue jeans matched the description given by Williams. According to Hoefield, there was no one else in the area who came close to fitting that description. Hoefield stopped defendant and determined his identity by checking his driver's license. He identified defendant at trial as the man he stopped on the day of the transaction.
In addition, the state introduced the videotape of the transaction. The tape depicts the officer stopping his car in a residential area next to where two men are standing. The officer asks them, "Do you know where I can get a twenty?" One of the men, alleged to be the defendant, says something to the effect of, "I can get you a twenty." That man leaves the scene, then returns with an object and hands it to Williams. The man is in the frame only briefly, but the tape is of sufficient quality to make out his face. Williams testified that he had viewed the tape, and that it was an accurate depiction of the transaction of September 15, 1998.
If the face of the man on the tape is compared to defendant's lineup photograph, it is evident that there is a close resemblance. However, a determination of the weight of the evidence is a question of fact, resting solely with the trier of fact. A reviewing court may impinge on the fact finding function of the jury only to the extent necessary to assure the Jackson standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence. State v. Lockett, 00-859 (La.App. 5 Cir. 11/28/00), 775 So.2d 1086. In the present case, the jurors were shown the tape and were thereby able to form their own judgments as to whether defendant was the man who sold Williams crack cocaine. After viewing defendant in court, the jury apparently believed he was the man in the videotape.
Based on the foregoing, we find that there was sufficient proof presented at trial for any rational trier of fact to find the essential elements of the crime, including identification, beyond a reasonable doubt. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, defendant contends that the trial court erred in denying his motion for new trial, which was based on the discovery of new evidence as to identity. LSA-C.Cr.P. art. 851 provides, in pertinent part:
The motion for new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;

*642 * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
* * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
A defendant seeking a new trial based on newly discovered evidence must establish four factors: (1) that new evidence was discovered after trial; (2) that failure to discover evidence before trial was not attributable to his lack of diligence; (3) that the new evidence is material to issues at trial; and (4) that evidence is of such a nature that it would probably produce a different verdict in the event of a retrial. State v. Cavalier, 96-3052 (La.10/31/97), 701 So.2d 949; State v. East, 99-1379 (La.App. 5 Cir. 7/25/00), 768 So.2d 173. In ruling on the motion, "[t]he trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment." State v. Prudholm, 446 So.2d 729 (La.1984).
The motion for new trial is based on the supposition that injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied, no matter the allegation upon which it is based. The ruling on a motion for new trial is left to the sound discretion of the trial judge, and will not be disturbed absent a clear abuse of discretion. State v. Washington, 98-69 (La. App. 5 Cir. 1/26/99), 727 So.2d 673.
Defendant filed a motion for new trial on May 11, 2000. The court heard and denied the motion just prior to sentencing on June 13, 2000. Defense counsel, who had not represented defendant at trial, argued that he had obtained a still photograph of the perpetrator taken from the police videotape. Counsel argued,
... that person who is in the freeze frame photograph, in my humble opinion, is not Lawrence Raines. I was not here and I did not try the case. I have not viewed the videotape, but I have viewed the freeze frame photograph that is contained in the State's file, and I would ask the Court to take a look at the photograph, and ask the Court to consider the fact that the person that is depicted in the photograph obviously is a man much smaller and much skinner [sic] than Mr. Raines, and much younger, as well.
The photograph produced by defendant at the motion for new trial is not contained in the record. However, the state did introduce three still photographs from the videotape at trial. Given the photographs and the videotape that were produced at trial, defendant cannot now say that the evidence was discovered after trial. As for defendant's argument that the photograph shows the perpetrator to have been someone other than himself, that is a matter for the trier of fact. The jury had the opportunity to see the defendant, the videotape and the state's still photographs at trial, and determined that the man on the tape was defendant. Given these circumstances, we cannot say that an injustice has been done to defendant such that he is entitled to a new trial. Accordingly, the trial judge did not abuse his *643 wide discretion in denying defendant's motion. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In his fourth assigned error, defendant complains that the imposition of a ten year sentence is excessive, given that he is first time felony offender convicted of selling only .23 grams of cocaine. We first note that defendant did not file a motion to reconsider sentence nor did he make a specific oral objection at the time of sentencing, as required by LSA-C.Cr.P. art. 881.1. Despite defendant's failure to comply with this article, we will nonetheless review his sentence for constitutional excessiveness. State v. Hester, 99-426 (La. App. 5 Cir. 9/28/99), 746 So.2d 95, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Moreau, 98-696 (La.App. 5 Cir. 1/26/99), 726 So.2d 512.
In the present case, defendant was convicted of distribution of cocaine. Based on the penalty provision for that offense, LSA-R.S. 40:967 B (4)(b), defendant was exposed to a possible sentence of five to thirty years at hard labor, and in addition, faced a possible fine of fifty thousand dollars. The court sentenced defendant to ten years at hard labor, a sentence at the lower end of the penalty range. He now contends that the sentence is excessive. We find that the record supports the sentence imposed.
Prior to imposing sentence, the trial judge considered LSA-C.Cr.P. art. 894.1 and noted that there was an undue risk that defendant would commit another crime, that defendant was in need of correctional treatment that can be provided most effectively by his commitment to an institution, and further that a lesser sentence would deprecate the seriousness of the crime. The judge also noted the negative impact that drugs have on people's lives.
In addition, the record contains a presentence investigation report which reads, in part, as follows:
Lawrence Raines is a fifty-three year old first felony offender who pled guilty to Theft, Possession With Intent to Distribute Cocaine and Possession of Cocaine. He has a prior misdemeanor drug conviction, Possession of marijuana. He did not successfully complete a two year active probation sentence for this offense, but rather was terminated unsatisfactorily. He has been uncooperative with this investigation and has attempted to manipulate our findings to his best advantage. Raines has either lied under oath when pleading guilty or else he lied repeatedly during this investigation. He never provided a sincere account of his involvement in these crimes. Lawrence Raines fervently believes he is the victim of mistaken identity and poor legal advice, both of which are the sole contributors to his present situation. A successful completion of probationary sentence would wholly involve this defendant assuming responsibility for his actions, something he *644 clearly has not done. Raines prefers a probation sentence, but his past probation record and current denial of criminal activity in the instant offenses, do not make him a likely successful candidate for probation. Additionally, this defendant is not eligible for probation for Possession With Intent to Distribute Cocaine, 40:967A, according to penalties detailed in Louisiana's Revised Statutes.
Based on these reasons, we find that the trial judge did not abuse his wide discretion in imposing a ten year sentence on this particular defendant. Although we do find that the sentence is not constitutionally excessive, it is illegally harsh. LSA-R.S. 40:967 B(4)(b) provides that those convicted of distribution of cocaine shall be sentenced to a term of imprisonment at hard labor for not less that five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension. The trial judge illegally sentenced defendant to all ten years without benefits.
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. LSA-C.Cr.P. art. 882. Accordingly, we amend the sentence to reflect that only the first five years of defendant's ten year sentence be served without benefit of parole, probation, or suspension of sentence. See State v. Malone, 31,726 (La.App. 2 Cir. 1/20/99), 728 So.2d 500, and State v. Calway, 98-2061 (La.App. 4 Cir. 11/17/99), 748 So.2d 1205.

ERRORS PATENT REVIEW
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals that the trial court failed to inform defendant at the time of sentencing of the two year limitation for filing applications for post conviction relief, as required by LSA-C.Cr.P. art. 930.8. We therefore instruct the trial court to send written notice to defendant of the two year prescriptive period and to file written proof in the record that defendant received the notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
For the reasons set forth herein, we affirm defendant's conviction. We amend his sentence to provide that the first five years of the sentence are to be served without benefit of parole, probation, or suspension. As amended, we affirm defendant's ten year sentence. We remand the matter for compliance with the provisions of LSA-C.Cr.P. art. 930.8.
CONVICTION AFFIRMED, SENTENCE AFFIRMED AS AMENDED, MATTER REMANDED.
NOTES
[1] Frank Williams is not the officer's actual name, but one he used while working undercover.