839 So.2d 323 (2003)
STATE of Louisiana
v.
Ashraf N. QUTOUM.
No. 02-KA-780.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*324 Martin E. Regan, Jr., Regan & Associates, P.L.C., New Orleans, LA, for Appellant, Ashraf N. Qutoum.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and MARION F. EDWARDS.
SUSAN M. CHEHARDY, Judge.
On January 14, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Ashraf N. Qutoum, with committing aggravated arson of a structure located at 900 Avenue B in Westwego on or about December 21, 1999. Defendant's trial commenced on January 23, 2001. After four days of testimony, the twelve-member jury found defendant guilty as charged. On January 29, 2001, defendant filed a motion for new trial. After extensive hearings, defendant's motion for new trial was denied on August 31, 2001.
On that same date, defendant waived sentencing delays, and the trial court sentenced defendant to imprisonment at hard labor for ten years, ordering that the first *325 two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. That day, defendant orally moved for an appeal. Subsequently, defendant filed a written motion for appeal, which was granted.
Facts
The testimony and other evidence introduced at trial shows that, on December 21, 1999, at approximately 6:30 p.m., a fire occurred at the Shop and Save Convenience store at 900 Avenue B in Westwego, Louisiana. Agent John Springer, an expert in the field of fire cause and origin investigation, testified that his investigation showed that the fire had been intentionally set using a flammable liquid and an open flame ignition source.
Monica Bass, whose family resided above the convenience store, testified that she and her two young children were in their apartment above the store at the time of the fire. She testified that neither she nor her children were injured during the fire.
Other evidence introduced at trial revealed that defendant owned the store and its contents. Further, defendant was experiencing financial difficulties at the time of the fire. Defendant had obtained insurance coverage on the store and its contents approximately one month prior to the fire and had increased the insurance coverage on the store and its contents approximately 11 days before the fire. Finally, defendant's cousin, Ashraf Dyouk, testified at trial that defendant admitted to him that defendant had started the fire.
Law and Argument
On appeal, defendant present four assignments of error: the evidence, viewed in the light most favorable to the prosecution, was constitutionally insufficient to support a verdict of guilty; the trial court abused its discretion in refusing to qualify David Tibbetts as an expert in cause and origin fire investigation; the trial court erred in denying a motion for new trial based on newly discovered evidence that Ashraf Dyouk perjured himself, while testifying for the State of Louisiana; and the trial court imposed an excessive sentence on Ashraf Qutoum, a first offender.
In his first assignment of error, defendant argues that the evidence was legally insufficient to convict him of aggravated arson. In essence, defendant contends that the State failed to prove any of the necessary elements of aggravated arson. He specifically that claims the State failed to prove beyond a reasonable doubt that the fire was intentionally set; that any flammable liquid was used to start the fire; or that it was foreseeable that human life might be endangered.
The standard for reviewing the sufficiency of the evidence presented in a particular case is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In applying the Jackson standard, a reviewing court will not assess credibility nor re-weigh the evidence. *326 State v. Rosiere, 488 So.2d 965, 968 (La. 1986).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the circumstantial evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
Defendant was convicted of aggravated arson, in violation of La. R.S. 14:51, which defines that crime as "the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered."
First, defendant argues that the State failed to prove beyond a reasonable doubt that the fire was intentionally set. However, Special Agent John Springer of the Bureau of Alcohol, Tobacco, and Firearms, an expert in the field of fire cause and origin investigation, testified, without contradiction, that the fire in question was intentionally set using a flammable liquid and an open flame ignition source.
Next, defendant argues that the State failed to prove beyond a reasonable doubt that any flammable liquid was used to start the fire, since the chemical analysis, conducted by an ATF chemist, of samples taken from the scene revealed no flammable liquids. Agent Springer explained that there were a number of reasons why no flammable liquid was found in the sample: the fire could have burned away the flammable product; the amount of liquid may have been so small that the instrument could not detect the type of liquid; the individuals who gathered the samples may have gathered them from the wrong spots; the liquids could have escaped from the metal cans if they had not been tightly sealed; or the water used to extinguish the fire could have dissolved the flammable liquid, if it were water-soluble. Agent Springer testified that the negative tests results did not affect his opinion about the cause and origin of the fire. See State v. Leger, In State v. Leger, 00-920, pp. 3-4 (La.App. 3 Cir. 12/20/00), 775 So.2d 1169, 1171-1172, writ denied, 01-240 (La.3/15/02), 811 So.2d 894.
Next, defendant argues that the State failed to prove beyond a reasonable doubt that it was foreseeable that human life might be endangered. Mrs. Bass testified that her family lived above the store in the apartment, which they rented from defendant. Defendant admitted that he spoke to Mrs. Bass three or four times the day of the fire. Further, based on the conversation between defendant and Mrs. Bass at noon on the day of the fire, defendant knew that the Bass family would be in the apartment that evening. Moreover, defendant knew that the Bass family had two small children. He even knew that the Bass' infant daughter had a serious medical condition. Lastly, and most disturbing, before the fire, defendant told his cousin that the tenants would be safe because they would smell the smoke and leave the building. See State v. Love, 611 So.2d 753, 756 (La.App. 4 Cir.1992), writ denied, 93-1384 (La.12/15/95), 664 So.2d 434.
Based on the foregoing, we conclude that any rational trier of fact could have found that the State proved the essential elements of aggravated arson beyond a *327 reasonable doubt. This argument lacks merit.
In his second assignment of error, defendant argues, citing State v. Lewis, 95-0209 (La.App. 4 Cir. 4/13/95), 654 So.2d 761[1] and La. C.E. art. 702, that the trial court abused its discretion in refusing to qualify David Tibbetts as an expert in cause-and-origin fire investigation. He contends that Tibbetts should have been qualified as an expert witness based on his 22 years of fire investigation experience, training, and education. Defendant claims that Tibbetts' method of fire investigation is the same type of fire investigation that was taught throughout the country by other experts in his field; that he is a state-certified fire investigator and an instructor at a nationally accredited fire-training school; and that he has used his training and experience to draw conclusions concerning fire while investigating hundreds of fire scenes.
The State notes that Tibbetts was not a certified arson investigator; has never been qualified as an expert in a court of law; has never been employed as an arson investigator; and does not hold a certification that allows him to classify fires above two alarms, where arson was suspected, or that involved fatalities.
In State v. Craig, 95-2499, pp. 8-9 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997), the Louisiana Supreme Court discussed the qualification of a witness as an expert:
Pursuant to La. C.E. art. 702, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In reviewing the decision of a trial court in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert and consider that the decision to accept or reject the offer rests within the sound discretion of the trial court. This Court employs that standard. Courts will also look to whether a witness has previously been qualified as an expert. Furthermore, the refusal of the trial court to receive such evidence will rarely, if ever, provide grounds for reversal. (Citations omitted).
At trial, Tibbetts testified that he was currently a district chief and Director of Training for the New Orleans Fire Department. Prior to becoming district chief, he was, for twelve years, a captain whose duties included, among other things, investigating the cause and origin of fires. He *328 also worked for International Training and Service Corporation (ITSC), a company that trains fire department personnel.
Tibbetts has an associate's degree in safety and fire technology. He attended the National Fire Academy and has served as an adjunct instructor for them. He admitted that, while the academy taught different aspects of firefighting, fire investigation, and safety, it did not teach about arson or fire origin.
Further, although he is a state-certified fire investigator level one, he could not "call" fires if those fires went above 2 alarms, if they involved suspected arson, or if they involved fatalities. He testified that, in any of those three situations, he had to call in a certified-trained fire investigator. Further, in his twelve years with the NOFD, Tibbetts had not "called" anything above a two-alarm fire. Furthermore, he had never made a "call" in an arson investigation.
Moreover, he admitted that firefighting is totally different from cause-and-origin investigation, but that, in firefighting training, he was trained to look for cause and origin. He also admitted that no more than six hours of his sixty-hour associate's degree in fire technology were devoted to fire cause-and-origin determination. In addition, although Tibbetts had taken numerous training courses during his career, he admitted that a minimum number of those dealt with fire cause-and-origin.
In the end, Tibbetts admitted he had more experience in the field of hazardous materials than anything else. Tibbetts testified he did not play a role with the New Orleans Fire Department as a certified arson investigator; that he did not have a license to do certain types of private cause-and-origin work; and that he was not a member of the Louisiana Arson and Prevention Association, the International Association of Arson Investigators, or a member of the International Association of Bomb Technicians and Investigators. He also admitted that he had never been qualified in a court of law as an expert in cause and origin investigation.
After much argument, the trial judge found that the witness was not qualified to testify as an expert except in the areas of fire safety and hazardous materials. Our review of the testimony, as noted above, reveals that the trial court did not abuse its discretion in refusing to qualify Tibbetts as an expert in the field of fire cause-and-origin investigation.[2] Defendant's second assignment of error merits little consideration.
In his third assignment of error, the defendant alleges that the trial court erred in denying his motion for new trial based on newly discovered evidence that Ashraf Dyouk perjured himself while testifying for the State of Louisiana against defendant. Defendant claims that, ten days after his trial, Dyouk spoke to one of his trial attorneys, Tim Garlick, and admitted that he lied when he testified at trial. According to defendant, his attorney, Garlick, believed, after speaking with Dyouk, that the defense was not provided with Brady-Giglio information regarding threats and inducements allegedly made to Dyouk by prosecutors.[3] Defendant contends that this evidence would have changed the jury's verdict, if it had been *329 introduced at trial. In addition, defendant argues that the trial court should have allowed his trial attorneys, Tim Garlick and Willard Hill, to testify at the new-trial hearing, instead of sustaining the State's hearsay objections to their testimony.
The State responds that, during the extensive and lengthy hearing (four separate days) on the new-trial motion, Dyouk denied under oath that he had spoken to either of the defense attorneys. Further, Dyouk reiterated that defendant told him that he had intentionally started the fire. Finally, the State contends that defendant failed to present evidence at the new-trial hearing that Dyouk had committed perjury.
In State v. Gilkers, 01-1379, p. 9 (La. App. 5 Cir. 5/29/02), 820 So.2d 1152, 1157, this Court discussed motions for new trial based on newly discovered evidence:
A motion for new trial is based on the supposition that an injustice has been done to the defendant and unless such injustice is shown, the new trial motion shall be denied, no matter the allegations upon which it is based. State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 642. In the case of State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1149, the Louisiana Supreme Court discussed the factors a defendant must show in seeking a motion for new trial based on newly-discovered evidence:
A defendant seeking a new trial based on newly-discovered evidence must show that the evidence was discovered since trial; that the failure to discover was not due to a lack of reasonable diligence; that the evidence is material; that the evidence is available; and, the evidence is such that, had it been introduced at the trial, it would probably have changed the verdict or judgment of guilty. When ruling on a new trial motion, a trial court's duty is the narrow one of ascertaining on an objective basis whether there is new material fit for a new jury's consideration. (Citations omitted).
The ruling on the motion for new trial is left to the sound discretion of the trial court judge and will not be disturbed absent a clear abuse of discretion. State v. Raines, supra.

Defendant's new-trial motion argued that the prosecution's key witness, Dyouk, had lied on the witness stand and had attempted to extort money and other personal gains in return for testimony. Subsequently, defendant filed a supplemental new-trial motion, arguing that he had submitted to a polygraph examination that indicated that he did not set the fire. He also contended that Dyouk's testimony was unclear as to the date (Christmas 1999 or Christmas 2000) that defendant confessed to the crime. Defendant argued (presumably in the alternative) that he was in Houston at the time of the confession and that he would produce witnesses to that effect.
Defendant further claimed that Dyouk's testimony was a surprise, which he was not prepared to counter.`He also alleged that Dyouk attempted to extort $50,000.00 from defendant and his family. Finally, he asserted that Dyouk told Tim Garlick, one of defendant's trial attorneys, that his testimony was false and he only testified because he was forced to do so by the District Attorney's office.
Hearings on defendant's new-trial motion were held on April 12, 2001, May 18, May 30, 2001, and August 31, 2001. On the first day of the hearing, Tim Garlick testified that he had run into Dyouk at the bank approximately one week after the trial. Defendant's trial attorneys both testified that they had not been provided *330 information as to any threats or promises that had been made by the prosecution to Dyouk during or before the trial.
Further, defense attorney Hill explained that he did not know that Dyouk was going to testify at trial that defendant had confessed to the crime, that he did not have time during the trial to obtain witnesses to impeach Dyouk's testimony, and that he did not have time to obtain evidence regarding the whereabouts of defendant when the confession was allegedly made.
Saed Nagi Qutoum, defendant's brother, testified that he attended defendant's trial. He also testified that defendant could not have confessed to Dyouk on Christmas Eve or New Year's Eve of 1999 or 2000, because he saw defendant in Houston, Texas on Christmas Eve and Christmas Day of 1999 and on New Year's Day of 2000. Further, Qutoum also testified that defendant went to a different state on Christmas Day 2000.
Morris Surber also provided an alibi for defendant during the times he allegedly confessed to Dyouk. Mr. Surber testified that he owned fireworks stands in Houston, and that he saw defendant working at a fireworks stand on December 31, 1999. Dyouk testified that he did not run into Garlick at the bank and also did not tell him he was forced to testify at trial against defendant. Further, Dyouk testified that, as clearly as he could recall, defendant confessed that he set fire to his own store to Dyouk on December 31, 1999.
On the final day of the new-trial hearing, defense counsel argued his second supplemental new-trial motion, claiming that he had witnesses and information that was not available to defense counsel at trial. The prosecutor responded that the second supplemental motion did not present newly discovered witnesses or evidence because (1) two of the witnesses defense counsel wanted to call, Brian Brown and Allen LeBlanc, were not newly discovered, since Brown, in fact, testified at trial; and (2) defense counsel knew at the time of the original motion for new trial that he needed witnesses as an alibi for December 31, 1999. The prosecutor further argued that the witness who had spoken to the alleged arsonist would be testifying as to hearsay, that that witness may be subjecting himself to a charge of perjury, and that he would need to be counseled as to his rights. The trial court, thereafter, denied defendant's second supplemental motion for new trial.
Defense counsel subsequently called Nagi Qutoum, defendant's father, as a witness. The trial court asked defense counsel if he was listed in the motion for new trial. Defense counsel refused to answer the question. Instead, he "terminated" the proceedings, alleging that in light of the court's rulings, he would no longer present any evidence in support of his motion for new trial and indicated that he would file an application for post-conviction relief. The trial judge then ruled on the original and first supplemental motions for new trial, stating:
The matter having been considered by the Court and the pleadings filed and the evidence offered by the witnesses the Court takes notice that it does not find that Article 854[4] of the Code of *331 Criminal Procedure has been complied with, that is to say the witnesses which [sic] have been offered before this Court do not support a finding that there was an exercise of reasonable diligence by the Defense that new evidence was discovered before or during the course of the trial. The witnesses which [sic] have testified at this point the Court finds nothing to suggest that they were not available during the course of the trial and that they could not have testified, in fact, the Defense so desired them to do so.
The Defense is correct in one point. There may be some post conviction issues and the Court does not speak to the merits of those, but as to a new trial we simply do not find that there is merit for same and we thereby deny the motion for a new trial.
When ruling on a new trial motion, a trial court's duty is the narrow one of ascertaining on an objective basis whether there is new material fit for a new jury's consideration. State v. Bright, 776 So.2d at 1149. Our review of the entire transcript of the hearing on the new-trial motion reveals that the trial judge was correct in finding that the defendant did not present new material fit for a new jury's consideration. Thus, we find that defendant's third assignment of error lacks merit.
Next, in his fourth assignment of error, defendant argues that his ten-year sentence was constitutionally excessive. He contends that the record does not support the sentence imposed. Defendant claims that the trial court based its sentence on his criminal history; however, he claims there was no evidence in the record that he had a criminal history.
After sentence was imposed, defense counsel orally objected to the sentence, noting that defendant did not have a criminal record. Additionally, defendant did not file a motion for reconsideration of the sentence as required by La.C.Cr.P. art. 881.1. Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only. State v. Hester, 99-426, p. 10 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 342.
Both the United States and Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. *332 Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
Defendant was convicted of aggravated arson and sentenced to 10 years of imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:51 provides that a person convicted of aggravated arson shall be imprisoned at hard labor for not less than six nor more than twenty years, and shall be fined not more than twenty-five thousand dollars.[5] Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence.
After the hearing on the motion for new trial, defendant waived sentencing delays, and the trial court stated as follows:
This matter is now before the before the Court for purposes of sentencing. The Court takes notice that the Defendant, Mr. Qutoum, was convicted by a jury of his peers for the crime of aggravated arson on the 26th day of January in the year 2001.
In imposing sentence, the Court has taken into consideration the provisions of the Code of Criminal Procedure Article 894.1 and further the following factors.
The Court notes that the Defendant has been convicted of a felony. The Court further notes the nature of the crime for which he has been convicted, that is aggravated arson. The Court notes that the offender created a risk of death or great bodily harm to other persons and particularly the Court notes that there was a minor child located within the building wherein the fire took place who had a respiratory problem for which the Defendant was aware of. There were other persons living within that area.
The Court is of the opinion that there is an undue risk that if any suspended sentence were imposed that it would depreciate the seriousness of the Defendant's conduct.
The Court further notes that there is a mandatory minimum of two years at hard labor which cannot be suspended, neither is there probation or parole available.
The Court is of the opinion that the Defendant is in need of correctional treatment in an institution under the supervision of the State of Louisiana; that any lessor [sic] sentence than which I will now impose would depreciate the seriousness of the Defendant's conduct.
The Court further takes notice of the Defendant's prior criminal history.
Accordingly, the Court sentences the Defendant to 10 years at hard labor. The first two years of that sentence must be served without benefit of probation, parole, or suspension of sentence.
In State v. Newsome, 524 So.2d 133, 134-135 (La.App. 4 Cir.1988), defendant was convicted of aggravated arson and sentenced to 20 years at hard labor. In Newsome, defendant threw flaming oil cans through the window of his ex-girlfriend's apartment, causing the plastic window panes to melt and the curtains to catch on fire. Her five sons and her brother were also in the apartment. The trial court imposed the maximum penalty of 20 years at hard labor, with the first two years to be spent without benefit of parole, probation, or suspension of sentence.
*333 On appeal, the Newsome court noted that defendant was 22 years old, had a prior criminal history, the crime was serious as evidenced by defendant threatening to kill everyone in the apartment while armed with a gun, and defendant showed no remorse and had a hostile, uncooperative attitude. Further, the Fourth Circuit discussed sentences imposed in other aggravated arson cases:
Few decisions are reported that address the appropriateness of sentences imposed for aggravated arson. None were found in which the trial judge imposed the maximum twenty year sentence. However, in State v. Simmons, 443 So.2d 512 (La.1983), a fifteen year sentence was imposed for this crime where defendant set fire to a bingo hall containing approximately 100-150 individuals.
Other courts have imposed the following sentences for aggravated arson: ten years in State v. Washington, 421 So.2d 887 (La.1982) where defendant was a third offender and set fire to the jail where he was incarcerated; nine and one half years in State v. Smith, 448 So.2d 778 (La.App. 2nd Cir.1984) where drunk defendant set fire to the house where his wife lived; six years in State v. Williams, 457 So.2d 610 (La.1984) where defendant set fire to the hotel at which his ex-girlfriend worked; seven years in State v. Barnes, 495 So.2d 310 (La.App. 4th Cir.1986) where defendant set fire to ex-girlfriend's house.
State v. Newsome, 524 So.2d at 135.
Defendant argues that the trial court erred in considering his prior criminal history when he had none. The record, in fact, does not indicate that defendant had any prior arrests or convictions. We find that the trial judge did err in considering defendant's criminal history in imposing sentence. We also find that the error was harmless, because the record supports the sentence imposed.
Defendant, who was 26 years old at the time of trial, owned a building at 900 Avenue B in Westwego that contained a grocery store on the first floor and an apartment on the second floor. The evidence showed that defendant was having financial problems; that he set the building on fire to collect the insurance proceeds; that he knew a family with two young children was living in the apartment on the second floor; that the family's infant daughter had a respiratory condition that required her to continually wear a monitor; and, finally, that he knew that the mother and children were in the apartment on the day of the fire. Defendant created a risk of death or great bodily harm to the family who lived in the apartment above the grocery store and to everyone who lived in the area of the building for financial gain.
Defendant was exposed to a maximum sentence of twenty years; however, he received only a mid-range sentence of ten years. The facts of the case, when considered in light of the jurisprudence discussed previously, support the ten-year sentence. Based on the foregoing, we find that defendant's sentence was not constitutionally excessive. This assignment merits little consideration.
Finally, our review of the record reveals a patent error in this case. The trial court imposed an illegally lenient sentence when it failed to impose the mandatory fine of "not more than twenty-five thousand dollars" delineated in La. R.S. 14:51. This Court has the authority to notice an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; State v. Clemons, 01-1032 (La. App.2/26/02), 811 So.2d 1047, writ denied, 02-0866, 02-0918 (La.11/22/02), 834 So.2d *334 972, 2002 La. LEXIS 3354. Therefore, we remand this matter to the district court for imposition of an appropriate fine. In all other respects, the defendant's conviction and sentence are affirmed.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] Defendant cites State v. Lewis, 95-0209, pp. 1-2, 6-7 (La.App. 4 Cir. 4/13/95), 654 So.2d 761, 762, 765-766, to support his position that Tibbetts was qualified to testify as an expert in fire cause and origin. In Lewis, the defendant was indicted for aggravated rape and other offenses. A hearing was held to determine whether the assistant director of GenTest Laboratories should be recognized as an expert in the fields of molecular biology and DNA testing and analysis. The trial court denied the assistant director expert status because she was not the primary scientist handling testing in this case and she did not hold a doctorate degree. On appeal, the Fourth Circuit noted that the assistant director had never been denied expert qualification and, in fact, had been accepted as an expert in DNA analysis and testing in the State of Florida, Jefferson and St. Charles Parishes, and Orleans Criminal District Court. The Lewis court concluded that the trial court abused its discretion in refusing to accept the assistant director as an expert in the fields of DNA analysis and molecular biology. Lewis is distinguishable, however, from this case because Tibbetts had never been qualified as an expert in a court of law in the field of fire cause-and-origin investigation.
[2] In the interest of completeness, we note that defendant failed to proffer the substance of Tibbetts' testimony, thus, we cannot determine whether defendant's substantial rights were affected by the trial court's refusal to accept Tibbetts as an expert.
[3] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[4] La.C.Cr.P. Art. 854, entitled, "Newly discovered evidence; necessary allegations" reads:

A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;
(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence.
[5] The trial court failed to impose a fine as required by LSA-R.S. 14:51. Please see error patent discussion.