966 So.2d 616 (2007)
STATE of Louisiana
v.
Gary McCRAY.
No. 07-KA-143.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2007.
*618 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Megan L. Gorman, Martin Belanger, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
The defendant, Gary McCray, was charged by bill of information with six counts of distribution of cocaine within 1000 feet of a church in violation of La. R.S. 40:981.3. At the arraignment, the defendant entered a plea of not guilty. After a defense motion to suppress the identification was denied by the trial court, and the defendant was tried by a jury on counts 1 and 3. The jury found the defendant guilty as charged on counts 1 and 3, and the State dismissed the charges on counts 2, 4, 5 and 6. In due course, the defendant was sentenced to serve twenty years on each count with the first five years to be served without the benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently.
The State filed a multiple offender bill of information, which initially alleged defendant was a third felony offender. However, the bill was later amended to allege that the defendant was a second felony offender based on a 1995 conviction for attempt or conspiracy to distribute cocaine.
The defendant stipulated to his status as a second felony offender. The trial court set aside the original sentence on count 1 and re-sentenced the defendant as a multiple offender to serve twenty years without benefit of probation or suspension of sentence. The sentence was ordered to be served concurrently with any other sentence the defendant is serving.
The defendant filed this timely appeal to argue that his convictions were based on a tainted identification, and that the trial court erred in denying his motion to suppress the identification.
FACTS
In our consideration of the defendant's assertion that the trial court incorrectly denied his motion to suppress the identification, we have considered the evidence introduced at the hearing to suppress as well as the pertinent evidence given at trial.[1]
At the hearing on the motion to suppress the identification, Agent Josh Bell testified that he was involved in the surveillance team which gathered evidence ultimately resulting in the arrest of the defendant. Agent Bell stated that the transaction between members of the surveillance team and the defendant was videotaped. Agent Bell further stated that he was shown a photo lineup consisting of six similar looking black males. From that lineup, Agent Bell recognized the defendant.
Agent Jackson also testified at the hearing. He stated that he made two photo identifications about fifteen minutes apart. Agent Jackson was shown six photos at a *619 time and the only difference in the two lineups were that the photos were placed in a different order. Agent Jackson testified that he positively identified the defendant without hesitation in both photo lineups.
At trial Agent Jackson testified that he gave a description of the person from whom he purchased the cocaine to his surveillance team after the first drug transaction. After the second transaction, Agent Jackson confirmed that he purchased drugs from the same person again. Thus, prior to viewing the photo lineup, Agent Jackson had established that both transactions involved the same person. Further, Agent Jackson positively identified the defendant at trial.
Given the record before us, we do not find the identification procedure in this case resulted in a substantial likelihood of misidentification under the Manson factors.[2] Agent Jackson came face-to-face with defendant on two separate occasions in the middle of the afternoon while he was conducting undercover drug buys for the purpose of identifying street level drug dealers for subsequent arrest. Therefore, his degree of attention on defendant was presumably high. After the first transaction, Agent Jackson gave an accurate detailed description of defendant on the videotape. He made the identification the day after the second drug transaction, he was positive in his identification, and he made the identification without hesitation.
At trial, the court heard testimony from Agent Corey Wilson[3], an undercover agent in the Narcotics Division of the Jefferson Parish Sheriff's Office who conducts surveillance and undercover narcotics purchases. He testified that, after receiving complaints about drug activity around an apartment complex in the Bunche Village area next door to a church, his team began an investigation. Fellow undercover agents were provided with cash to purchase crack cocaine, while other agents were nearby to assist as necessary. The vehicle used for the investigation is equipped with a video camera and a microphone. A transmitter is worn by the undercover agent making the buy. On the day drugs were purchased from the defendant, Agent Wilson was observing the purchases and Agent Dion Jackson made the purchase.
Agent Wilson explained that Agent Jackson made purchases on two occasions from the defendant. Agent Wilson heard the first transaction over the transmitter and actually observed the second transaction over the camera.
Agent Jackson also testified at trial. He stated that at about 3:00 p.m. he was walking in the Bunch Village area when the defendant came up to him and asked if the agent "needed some weed." Agent Jackson answered affirmatively. The defendant told Agent Jackson that only "hard" drugs were available. Agent Jackson told the defendant he wanted a "twenty", which the agent explained was one rock of cocaine. The defendant left, but returned shortly after with the cocaine and gave it to Agent Jackson. When Agent Jackson left the area, he transmitted the location, the description of the defendant and other pertinent information to fellow officers. Agent Jackson then returned to his office and gave the evidence to Agent Wally Davis.
A few days later Agent Jackson returned to the Bunche Village area and encountered the defendant again. On this occasion the defendant told Agent Jackson *620 to park on the side of an apartment complex at 1001 South Sibley. When the agent complied, the defendant inquired as to how many rocks of cocaine the agent wanted. Agent Jackson purchased two "twenties." After receiving the money, the defendant went to the stairwell of the building and did a "hand to hand" with another male and then returned to the agent's car to give him two rocks of cocaine. On both occasions, the defendant asked for two more dollars, which Agent Jackson gave him. Again Agent Jackson met with Agent Davis to give him the evidence. Subsequently, Agent Jackson identified the defendant in a photo lineup prepared by Agent Davis, and the defendant was arrested.
The record before us also includes evidence introduced by the State that verifies the substance purchased by Agent Jackson was cocaine. There is also photographic evidence which shows that Calvary Baptist Church is next door to the site of the purchases, and video tapes of the two transactions between Agent Jackson and the defendant.
LAW
In brief to this Court, the defendant asserts that his convictions were highly suspect due to a tainted identification. The defendant argues that the photographic lineups were unduly suggestive so as to taint the in-court identification. His argument is twofold. He argues that, except for race and sex, he has no common characteristics to the other men in the photo lineups. Because of that, the defendant argues his photograph was prominently displayed in the lineups. Further, he argues the manner in which the photo lineups were conducted was prejudicial. The defendant asserts that Agent Jackson viewed two lineups; however, the only difference in the second lineup was that the same photos were put in a different order and shown to Agent Jackson shortly after he viewed the first lineup. Consequently, the defendant argues that the two photo lineups for the two drug buys were in reality only one photo lineup.
The defendant also contends that, at trial Agent Jackson could not recall the description of the defendant he gave to fellow members of the surveillance team. Further, the defendant notes that no description was given of his prominent physical characteristics which included a scar on his bicep and large lumps on his back shoulder. The defendant argues that those significant physical features were not mentioned at trial for comparison purposes. The defendant contends that all of these issues related to his identification warrant reversal of his convictions.
The State responds that even if the photo lineups were suggestive, there was no substantial likelihood of misidentification. The State makes the points that the drug transactions occurred during the day, the undercover agent had full opportunity to view defendant and was focused on him, and the undercover agent described defendant immediately after the drug deal. The State further asserts that even if the out-of-court identifications were inadmissible, it was harmless error since the jury viewed the videotapes of the drug transactions and there were several in-court identifications.
The proper identification of a defendant is an essential element in the conviction of any crime. A defendant challenging an identification procedure has the burden to prove that the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process.[4] Strict identity *621 of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification.[5]
In its determination of whether an identification presents a substantial likelihood of misidentification, a court must consider the totality of the circumstances.[6] On appellate review, this court is not limited to the evidence adduced at the hearing on the motion; instead, it may also consider pertinent evidence given at trial, in determining whether the ruling on a defendant's motion to suppress is correct.[7]
The standard of review for identification procedures is fairness, and the linchpin in determining the admissibility of identification testimony is reliability.[8] The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Any corrupting effect of a suggested identification procedure is to be weighed against these factors.[9]
In considering the defendant's arguments and in our application of the law in our review, we are mindful that the trial court's decision to deny a motion to suppress must be afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression.[10]
The photos used in both lineups are contained in the record, as are the videotapes of the transactions. Contrary to the defendant's assertion, the photos used in the lineup show six black males with similar facial features, and comparable amounts of facial hair. We do not find the lineups suggestive either in the other photos chosen for the lineup, or in the way the two lineups were presented.
Defendant further challenges Agent Jackson's identification on the basis that no description of the seller was presented, and Agent Jackson could not remember the description he gave of the perpetrator. We are not persuaded by this argument. Contrary to defendant's claim, Agent Jackson's detailed description of the seller was presented through the videotape of the first transaction, which was shown to the jury. In the videotape, Agent Jackson is heard describing the seller as an older-looking black male, taller than the undercover agent, with a medium complexion, light dirty brown hair in an afro style that was thinning in the back of his head, and wearing a dirty white "wife beater" shirt and dirty blue jeans. Further, Agent Jackson identified the defendant at trial. Although, the defendant is correct in his assertion that Agent Jackson failed to describe defendant's distinct features, his identification of the defendant is consistent, and certain.
We find this assignment to be without merit.
*622 This court has conducted a review of the record for errors patent in accordance with La.C.Cr.P. art. 920.[11] We find several errors regarding the sentencing. First, we note that the trial judge has imposed an illegally excessive sentence which requires correction.
The trial court impermissibly imposed the first five years of the defendant's sentence without parole, probation, or suspension of sentence, instead of the correct two year restriction.
The defendant was convicted of two counts of distribution of cocaine within 1,000 feet of a church, a violation of La. R.S. 40:981.3(A)(3). La. R.S. 981.3(E) provides that a defendant "shall be punished by imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of La. R.S. 40:966 through 970." La. R.S. 40:967 is the applicable provision for distribution of cocaine and subsection B(4)(b) provides that the first two years of the sentence is to be served without parole, probation, or suspension of sentence.
Although the sentence on count one was vacated in favor of an enhanced multiple offender sentence, the defendant's sentence on count three[12] remains illegally excessive and must be corrected. When a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme Court has ruled that the Courts of Appeal;
....... should not rely on La.R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence "at any time." State v. Sanders, 04-0017 (La.5/14/04), 876 So.2d 42.
Accordingly, we hereby amend the defendant's sentence on count three to reflect only the first two years of the sentence is to be served without the benefit of parole, probation, or suspension of sentence.
Further, the sentence on count one is illegally lenient because the trial court failed to impose a mandatory fine in accordance with La. R.S. 40:981.3(E), which requires that the court impose the "maximum fine" for violation of the applicable statute. La. R.S. 40:967 B(4)(b) provides that a fine of "not more than fifty thousand dollars" may be imposed. An illegal sentence may be corrected at any time by an appellate court on review.[13] The sentence is hereby amended to provide that the defendant shall pay a fine of fifty thousand dollars.
Additionally, we note that although the trial court imposed the enhanced sentence on count one without the benefit of probation or suspension of sentence, it did not impose the first two years of the enhanced sentence without benefit of parole as required by La. R.S. 40:981.3(E) and La. R.S. 40:967(B)(4)(b). Nevertheless, no remedial action is required because under State v. Williams, 00-725 (La.11/28/01), 800 So.2d 790, 799, and La. R.S. 15:301.1(A), the without benefits provision of a statute is self-activating.
Finally, we find that the trial court failed to adequately inform the defendant of the time limitations within which he must apply for post-conviction relief. La.C.Cr.P. art. 930.8 provides that *623 a defendant has two years from the date the "judgment of conviction and sentence has become final" in which to apply for post-conviction relief. We remand this matter to the trial court to properly inform defendant of the prescriptive period by sending him written notice within ten days of the rendition of this opinion and to file written proof in the record that defendant received such notice.[14]
Accordingly, we amend defendant's sentence on count two to reflect only the first two years of the sentence is to be served without the benefit of parole, probation, or suspension of sentence and imposes a fine of fifty thousand dollars. As amended, the defendant's conviction and sentence is affirmed. The matter is remanded to trial court for correction of the commitment and compliance with the instructions herein.
AMENDED AND AS AMENDED AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] See: State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, writ denied 01-1906 (La.5/10/02), 815 So.2d 833.
[2] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140(1977)
[3] Names given for undercover agents are false to protect their identity.
[4] State v. Thomas, 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372.
[5] State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1145
[6] State v. Singleton, 05-634 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 808, writ denied, 06-1208 (La.11/17/06), 942 So.2d 532
[7] State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635
[8] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
[9] Id.
[10] State v. Raines, supra. 788 So.2d at 640
[11] (See also, State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990)).
[12] Count three of the original indictment became count two for jury purposes when counts 2, 4, 5 and 6 were dismissed.
[13] La.C.Cr.P. art. 882(A)
[14] State v. Thomas, 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 381-382