919 So.2d 779 (2005)
STATE of Louisiana
v.
Ronald JACKSON.
No. 05-KA-527.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*781 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS Judge.
The defendant, Ronald Jackson, was charged by bill of information with ten counts of armed robbery, a violation of LSA-R.S. 14:64. After the trial court denied *782 his joint motion to suppress statements and identification, and pursuant to a plea agreement, the defendant withdrew his not guilty pleas on six counts of the indictment, and entered Crosby[1] pleas on those counts. In addition, pursuant to the plea agreement, the state nolle prossed the remaining four counts, and agreed not to multiple bill the defendant as long as he testified against two co-defendants. On the same day, the defendant was sentenced to 35 years at hard labor without benefit of probation, parole, or suspension of sentence on each count, to be served concurrently with each other and with credit for time served. In addition, the trial court ordered that the defendant's concurrent sentences, in this case, run concurrently with his sentence in Plaquemines Parish.
Thereafter, the defendant filed a timely application for post conviction relief on his Crosby plea, and the trial court granted the defendant an out-of-time appeal pursuant to State v. Counterman, 475 So.2d 336 (La.1985). See, State v. Gassenberger, 02-658, p. 3 (La.App. 5 Cir. 12/11/02), 836 So.2d 271, 273. The Crosby plea, however, served as a timely appeal. State v. Cambre, 04-1317 (La.App.5.4/26/05), 902 So.2d 473, 479, n. 7 (citation omitted).
The following was adduced at the motion to suppress hearing. Detective David Mascaro of the Jefferson Parish Sheriff's Office testified that after he Mirandized and completed the rights of arrestee form with the defendant, he took three taped statements from the defendant. During the first statement, the defendant asked to stop, because he was nervous. The second statement began five minutes after the first statement ended. The defendant never asked for an attorney. Detective Mascaro testified that he became aware that the defendant was addicted to heroin, at the end of the second statement, when he explained it was why he did the things he did. The defendant did not advise Detective Mascaro that he was on heroin at the time he gave the statement, nor did the defendant appear to be under the influence to the detective. The defendant did not slur his words, nor did he appear to be sleepy. Detective Mascaro testified that he did not check the defendant's arms to see if he shot up or had track marks. When asked if he had "any reason to believe that [the defendant] didn't understand anything about the procedures that were taking place, the rights that he waived, the information that he was giving you?," Detective Mascaro replied no and described the defendant as very intelligent and very cooperative.
Detective Roger Gorumba of the Jefferson Parish Sheriff's Office identified the photographic line-up shown to the Walgreen's employees, Dana Frazier and Mark Siegler. Detective Gorumba testified that both Walgreen's employees positively identified the defendant in the photographic lineup. He personally prepared the photographic lineup, and presented it to the two Walgreen's employees, on different occasions. He asked them to look at the lineup and tell him if they recognized anybody. He testified that he did not force, coerce, intimidate or make promises to get the Walgreen's employees to make the identifications. In addition, he did not lead them to believe that they should identify somebody in the array, nor make them believe that the perpetrator's photograph was in the photographic lineup. Detective Gorumba testified that he inadvertently made the ink mark on the photographic lineup after the identifications. He did not know how the mark was made on the photographic lineup. Detective *783 Gorumba was asked about a scratch mark on the photographic lineup. He testified that he did not know about a scratch, and did not see it when asked to look at the lineup. After defense counsel told him that he had to hold it up to the light in a certain way, Detective Gorumba testified that he could barely see the scratch mark and had no idea when it occurred, since it was the first time he saw it.
In his only allegation of error, defendant argues that the trial court erred by failing to suppress the defendant's statements and one identification gathered as the result of illegal procedures.
The state argues that the defendant has waived his rights to appeal the assigned errors on the motions to suppress, because he did not specify, in his Crosby plea, which pre-trial rulings he wanted to preserve for appellate review. The state contends that neither the defendant's motion for appeal, the transcript of the plea hearing, nor the plea form specify the rulings that the defendant wanted to preserve, which is required by Crosby.
In State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196, the Louisiana Supreme Court discussed the appellate review available to a defendant that pleads guilty under Crosby, but does not specify which pre-trial rulings he desires to reserve for appeal.
A defendant's failure to specify which pre-trial rulings he desires to reserve for appeal as part of a guilty plea entered pursuant to State v. Crosby, 338 So.2d 584 (La.1976), may limit the scope of appellate review but should not preclude review altogether. See Crosby, 338 So.2d at 586 ("If we are not able to afford the accused their bargained-for appellate review, we must set aside the guilty pleas .... because of the non-performance of the plea bargain (or the impossibility of the state to perform it) by virtue of which the plea was obtained."); see also State v. Singleton, 614 So.2d 1242, 1243 (La.1993) ("To the extent that counsel also reserved appellate review of sentence as part of the guilty plea, denial of that review ... would jeopardize the voluntariness of those pleas."). Absent a detailed specification of which adverse pre-trial rulings the defendant reserved for appellate review as part of his guilty plea, an appellate court should presume that the trial court permitted a Crosby reservation no broader than necessary to effectuate the underlying purpose of conditional guilty pleas, i.e., to preserve review of evidentiary rulings which "go to the heart of the prosecution's case" that a defendant would otherwise waive by entering an unqualified guilty plea. Crosby, 338 So.2d at 591. Such rulings typically include denial of a motion to suppress evidence or a confession and exclude rulings which may affect the conduct of trial but "which do not substantially relate to guilt, such as the denial of a continuance or severance." Id.

State v. Joseph, 847 So.2d at 1196-1197.
We recognize that the transcript and the Wavier of Constitutional Rights form both indicate that the defendant pled guilty pursuant to Crosby approximately two months after the denial of his motions to suppress, not immediately afterwards, and did not specify any pre-plea rulings to be reserved for appeal. In addition, the defendant, in the present case, waited over a month to file his application for post conviction relief, not two days. However, the defendant stated in his post-conviction application that "he pled guilty his appointed counsel reserved the right to file an appeal (Crosby) on the denial of the pre-trial Motion To Suppress judgment." In addition, the record before this court does *784 indicate that the motions to suppress were the only pre-trial motions. Accordingly, we will consider the defendant's assigned errors on denial of his motion to suppress.
In his sole assignment of error, the defendant argues that his statements were the result of illegal procedures, and the photographic line-up shown to several of the victims was unduly suggestive.
First, the defendant argues that his statements were the result of illegal procedures. He claims that Detective Mascaro took his statements, over a five hour period, knowing that he was addicted to heroin without checking to see if he was under the influence of the drug or competent to waive his rights. He claims that Detective Mascaro never checked his arms for fresh track marks of drug use. The defendant contends that his request to stop the first interview, and the change of subject to drugs, at the start of the second interview, proves that he was experiencing problems related to his addiction. In addition, he claims that Detective Mascaro never inquired about how much sleep he had in the previous twenty-four hours, before questioning him for five hours. The defendant contends that his drugged and sleepless condition diminished his capacity to understand the charges against him and his constitutional rights, and to make a reasoned waiver; therefore, his statements should have been suppressed. In addition, the defendant contends that Detective Mascaro never inquired into his educational background.
The state argues that the officer who took the defendant's three statements testified that the defendant did not appear to be under the influence of drugs. The defendant appeared alert and aware, not slurring his words or appearing sleepy. The officer described the defendant as very intelligent and very cooperative. The state also notes that taped statements occurred after the defendant was Mirandized, and the defendant signed and completed the rights of arrestee form. During those taped statements, the defendant never requested an attorney or suggested that he was mistreated, nor was there any indication that he was sleepy or incompetent to give a statement.
A trial court's determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. State v. Massey, 02-872, p. 3 (La. App. 5 Cir. 2/11/03), 841 So.2d 862, 864, writ denied, 03-805 (La.10/17/03), 855 So.2d 758.
The state has the burden of affirmatively showing that a confession was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises before it may be admitted into evidence. LSA-R.S. 15:451; State v. Dewey, 408 So.2d 1255, 1258 (La.1982). If the statement was made during custodial interrogation, the state must also show that the defendant was advised of his constitutional rights. Id.; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966). See, State v. Brown, 03-0897 (La.4/12/05), 907 So.2d 1. Whether a defendant's purported waiver of Miranda rights was voluntary is determined by the totality of the circumstances. State v. Pugh, 02-171, (La. App. 5 Cir. 10/16/02), 831 So.2d 341, 352. Intoxication only renders a statement involuntary when the intoxication is of such a degree that it negates the defendant's comprehension and renders him unconscious of the consequences of what he or she is saying. State v. Quest, 00-205, (La. App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. Determinations of whether the intoxication existed and was of a degree sufficient to vitiate the voluntariness of the *785 defendant's confession are questions of fact to be determined by the trial court. Id. The trial court's conclusions on this issue will not be disturbed unless unsupported by the evidence. Id. A diminished intellectual capacity alone does not vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Pugh, 831 So.2d at 352. The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement. Id. A court's determination of the voluntariness of a confession or statement is made on a case-by-case basis, i.e. facts and circumstance of each situation. State v. Quest, 772 So.2d at 780. A trial court's determination on the admissibility and his conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id.
We find that the trial court did not err in finding that the defendant's statement was freely and voluntarily given and in denying the motion to suppress, because if the defendant was under the influence of drugs, his alleged intoxicated state was not sufficient to vitiate the voluntariness of his statement. At the time of the interrogation, the defendant never stated that he was on heroin and never stated that he had used the drug on the same day as his statement. At the motion to suppress hearing, Detective Mascaro testified that after he Mirandized and completed the rights of arrestee form with the defendant he took three taped statements. Detective Mascaro testified that the defendant told him that he was addicted to heroin, at the end of the second statement. However, the defendant did not advise Detective Mascaro that he was on heroin at the time he gave the statement. Detective Mascaro testified that the defendant did not appear to be under the influence of drugs. The defendant did not slur his words, nor did he appear to be sleepy. While Detective Mascaro did not check the defendant's arms to see if he shot up or had track marks, he testified that he believed the defendant understood the procedures that were taking place, the rights that he waived, and the information that he was given. Detective Mascaro testified that the defendant as very intelligent and very cooperative.
In addition, the evidence adduced does not show that sleeplessness or the defendant's educational background affected the defendant's ability to understand his rights and waive them prior to giving his statements. At the motion to suppress hearing, Detective Mascaro testified that the defendant asked to stop during the first statement, because he was nervous. The defendant did not at anytime ask to stop, because he was sleepy. In fact, the second statement began five minutes after the first statement ended. Detective Mascaro also testified that he believed the defendant understood the procedures that were taking place, the rights that he waived, and the information that he gave. In addition, Detective Mascaro testified that the defendant as very intelligent and very cooperative.
We find no merit to defendant's allegation that the trial court erred in denying his motion to suppress his statements.
Second, the defendant argues that the photographic line-up shown to several of the victims was unduly suggestive. He claims that in the photographic lineup shown to the Walgreen's employees, Dana Frazier and Mark Siegler, his was the only picture that had an ink mark and a scratch making his picture distinctive. He notes that Detective Roger Gorumba admitted, *786 at the hearing on the motion to suppress, that he inadvertently marked the defendant's picture with ink but he could not remember how the mark got there. Detective Gorumba also did not notice the scratch on the defendant's photograph before it was shown to him at the hearing. The defendant contends that because the identifications of the Walgreen victims were tainted by the marks their identifications are unreliable. Therefore, the trial court erred in not suppressing the evidence.
The state argues that the defendant's photograph was not distinguished from the other photographs in the photographic lineup, in any appreciable way, causing the attention of the witnesses to focus on the defendant. That state claims that the ink mark that Detective Gorumba admits he inadvertently placed on the photograph, after identification by the witnesses, was to the right of photograph # 6 not the defendant's photograph, which is photograph # 3. In addition, the state claims that the "fainter than light" scratch mark on the defendant's photograph did not distinguish it in any substantial way. The state contends that there was no appreciable difference between the scratch mark on the defendant's photograph and the small inferior scratches on most of the photographs shown to the victims. Therefore, the scratch on the defendant's photograph did not cause the attention of the witnesses to focus unduly on the defendant.
A defendant has the burden of proof on a motion to suppress an out-of-court identification. LSA-C.Cr.P. art. 703(D). In order to suppress an identification, a defendant must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 812 (La.1999), certiorari denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000); State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if the witness' attention is unduly focused on the defendant during the procedure. State v. Broadway, 753 So.2d at 812. When determining the constitutionality and consequent admissibility of an out-of-court identification procedure, the court must first make a determination of whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). If the court finds that the police used an impermissibly suggestive procedure in obtaining the out-of-court identification, then the court must decide, under all the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Id. The Manson court determined five factors to consider when deciding whether an identification was reliable. They are the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the perpetrator, the level of certainty demonstrated by the witness, and the period of time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253 (1977).
We find that the trial court did not err in not suppressing the identifications of the Walgreen's employees, because we do not find that the photographic lineup used was suggestive. Detective Roger Gorumba testified that both Walgreen's employees positively identified the defendant from the photographic lineup he personally prepared before he inadvertently made the mark on the photographic lineup, closer to photograph # 6 than the defendant's photograph. *787 In addition, Detective Gorumba testified that he could barely see the scratch mark and had no idea when it occurred; there are no appreciable difference between the scratch mark on the defendant's photograph and the small inferior scratches on the other photographs, as suggested by the state. Therefore, the scratch on the defendant's photograph did not cause the attention of the Walgreen's employees to focus unduly on the defendant's photograph.
Since the defendant has not proven that the out-of-court identification procedure was impermissibly suggestive, we find no error in the trial court's denial of his motion to suppress the identification.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following errors.
First, at the sentencing hearing, the trial court informed the defendant that he was being sentenced to 35 years on each count. However, the commitment entry states that the defendant is sentenced to imprisonment at hard labor for a term of 35 years. It is well settled that when the transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Therefore, the case should be remanded and the trial court ordered to correct the commitment entry to show that the defendant received 35 years on each count to be served concurrently, in order to insure an accurate record. State v. Hall, 03-906, (La.App. 5 Cir. 5/26/04), 875 So.2d 996, 1007, writ denied, State v. Barnes, 04-1875 (La.12/10/04), 888 So.2d 834.
Second, the trial court informed the defendant that he had two years from the date the sentence became final to file for post-conviction relief. However, the commitment entry states that the defendant has two years after his judgment of conviction and sentence has become final to seek post-conviction relief. The two-year post-conviction relief prescriptive period begins to run after the judgment of conviction and sentence has become final. LSA-C.Cr.P. Art. 930.8. It is well settled that when the transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, supra. Therefore, we remand this case and order that trial court to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant after the rendition of this Court's opinion and filing written proof that the defendant received the notice in the record. State v. Hutchinson, 02-60, (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
Accordingly, we affirm the defendant's conviction and sentence. We remand the case to the district court with instructions for the trial court to correctly inform the defendant of the prescriptive provisions for seeking post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] 338 So.2d 584 (La.1976).