984 So.2d 856 (2008)
STATE of Louisiana
v.
Hampton ROBINSON.
No. 07-KA-832.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*859 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Hampton Robinson, Jackson, LA, In Proper Person.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The defendant was convicted of one count of armed robbery and one count of attempted armed robbery. After denying the defendant's counseled motion for new trial, and defendant's request for a pre-sentencing investigation, the trial judge sentenced the defendant to 25 years on each count without benefit of parole, probation, or suspension of sentence, to be served concurrently. The trial court also sentenced defendant to an additional five years at hard labor on each count without benefit of parole, probation of suspension of sentence to run consecutively to the 25 years since the defendant used a firearm to commit the crimes, pursuant to LSA-R.S. 14:64.3. Thereafter the trial court denied defendant's motion for reconsideration of sentence and defendant appealed.
On appeal, this Court vacated defendant's sentences, finding error in the trial court's imposition of the two five year enhancements because the State failed to file notice that it intended to utilize the sentencing provisions of LSA-R.S. 14:64.3. This Court further found that the trial court failed to rule on defendant's pro se motion for new trial. The matter was remanded the matter for further proceedings, reserving to defendant the right to appeal his convictions and sentences in the event of an adverse ruling on the motion for new trial. State v. Robinson, 06-464, p. 2 (La.App. 5 Cir. 12/12/06), 947 So.2d 783, 784.
*860 On remand, the trial court denied defendant's pro se motion for new trial was denied. The defendant was resentenced to 25 years on each count, without benefit of probation, parole or suspension of sentence, to be served concurrently. Defendant presented an oral motion for reconsideration, which was denied. This appeal followed.
In counseled brief, defendant challenges his sentence as harsh and excessive. Defendant also filed a pro se brief, in which he alleges that the trial court erred in denying his motion to suppress identification and that the evidence was insufficient to prove guilt beyond a reasonable doubt. For the reasons that follow, we affirm the defendant's conviction and sentence.
The following facts were adduced at the trial of this matter. Michael Frederick Bernheisel testified that, on July 5, 2004, he was working as a cashier at the Airport Fuel Mart located between North Bengal and North Sibley Streets. Between 9:00 p.m. and 10:00 p.m. that night, Bernheisel was standing behind the counter waiting on a customer when the door flew open, and a man walked in and pointed a chrome-colored .38 revolver at him and the customer. Bernheisel identified the defendant, at trial, as the man who came into the Airport Fuel Mart and pointed a gun at him. The defendant said, "You know what time it is." Bernheisel recognized the defendant as a former customer. He estimated that the defendant came into the store as a customer approximately 50 times over a two-year period. Bernheisel even remembered the two cigar brands the defendant normally purchased at the store. Bernheisel had not seen the defendant in a month prior to the robbery. Bernheisel testified that, on the day of the robbery, the defendant was wearing all black, i.e., black jeans, a short sleeve black shirt, a black baseball cap, and a black backpack on his back, and a folded-up black bandana. The folded black bandana was "three fingers wide" and "basically covered his lips", which allowed Bernheisel to see "basically [the defendant's] entire face," i.e., his bottom jaw line and goatee. Bernheisel testified that the defendant had him empty all the money out of the cash register, approximately $300 to $400. The defendant also took the customer's twenty-dollar bill. After the defendant took the money, he ran out the door.
Bernheisel followed the defendant and observed that he ran to the left of the store on North Bengal Street. Bernheisel dialed 911 and pressed the hold-up alarm. Jefferson Parish Sheriffs officers including Deputy Kavanaugh[1] and Detective Decker responded to the call. Bernheisel testified that he told Detective Decker that he recognized the defendant and gave him a full description of the defendant.
On July 9, 2004, Bernheisel testified that he was again working at the Airport Fuel Mart with another employee, Quyet Tran, when the defendant robbed the store again. Bernheisel was standing behind the bulletproof glass off to the side of the cash register with his back towards the door. Tran was on the other side of the bulletproof glass, outside the cash register area. There was also one female customer in the store. Both Bernheisel and Tran testified that when the defendant entered the store, he said, "You know what time it *861 is." Tran testified that he immediately recognized the defendant, whom he identified in court, as a regular customer who always escorted two young girls to the store.[2] Tran testified that the defendant was three feet away when he pointed a black gun at him and told him to get down. Bernheisel saw the defendant point a black semi-automatic directly at Tran before Tran ran past the counter. Bernheisel looked over to see what was going on, and then he reached down and grabbed a weapon. Tran testified that the defendant pointed the gun at Bernheisel when the defendant realized that Bernheisel was in the store. Bernheisel and Tran both testified that as soon as Bernheisel started to pick up the weapon, the defendant ran out the door. Tran testified that Bernheisel pushed the panic button and ran after the defendant. Bernheisel testified that as soon as he got to the side street, he saw an aqua-colored Acura Integra speeding off.[3] Bernheisel gave Detective Decker another full description of the defendant. Bernheisel testified that the defendant wore a green bandana in a "cowboy/Indian style," blue jeans, and a light-colored or white short-sleeve t-shirt during the July 9, 2004 armed robbery. Tran testified that he also told Detective Decker that he knew the defendant. Tran described the defendant as wearing black jeans, a blue shirt, a black hat, and a bandana covering his mouth in a "cowboy style", i.e., "like a triangle."
Bernheisel testified that when Detective Decker showed him the first photographic lineup, he informed Detective Decker that the defendant was not in the photographic lineup. However, Bernheisel told Detective Decker that he recognized another man in that lineup who regularly came into the store. Tran also testified that, when he was initially showed a photographic lineup, he told Detective Decker that he recognized one of the men pictured as a regular customer, but that he was not the man who pointed the gun at him during the robbery.
Bernheisel testified that he was shown a second photographic lineup, and he positively identified the defendant after carefully reviewing it. Bernheisel had no doubt in his mind that the defendant was the man who robbed the Airport Fuel Mart on July 5, 2004, and the man who attempted to rob the Airport Fuel Mart on July 9, 2004. Tran testified that, when he was shown a second photographic lineup, he identified the defendant was the man who pointed a gun at him during the robbery. Tran was one hundred percent sure that the defendant was the man who pointed the gun at him on July 9, 2004.
Thereafter, Detective Decker was informed by a sergeant in street crimes that the description of the attempted robbery suspect was similar to a man who lived in the neighborhood named "Rufus Parrot." Based on this information, Detective Decker included Parrot's picture in the first photographic lineup that he showed to Bernheisel. Detective Decker was not sure if he showed the photographic lineup to Tran. Bernheisel recognized Parrot, but told Detective Decker that he was not the man who committed the robbery. Detective Decker testified that he subsequently was contacted by Bernheisel, who informed him that the store's patrons said that the robbery suspect lived next door to Parrot. Based on this information, Detective *862 Decker developed the defendant as a suspect. Detective Decker created a second photographic lineup containing the defendant's picture, which Bernheisel positively identified. According to Detective Decker, Bernheisel made an immediate identification of the defendant. Tran also positively identified the defendant in the second photographic lineup without hesitation, as the man who committed the attempted armed robbery.
After obtaining an arrest warrant, Detective Decker learned that defendant lived at 221 North Sibley Street, which according to Detective Decker is located approximately one block from the Airport Fuel Mart. Detective Decker later learned that the defendant's address was, in fact, next door to Parrot's address. Subsequently, the defendant turned himself into the Kenner Police Department.
Jessica Sanders, the defendant's 16-year-old girlfriend, testified that, the defendant was with her on July 5, 2004 and again on July 9, 2004. Sanders also testified that the defendant had two tattoos on his arm and two tattoos on his wrist, prior to July 5, 2004.[4]
Bonita Robinson, the defendant's mother, testified that defendant lived in the residence on North Sibley Street with her most of the time. She testified that on July 9, 2004. Ms. Robinson testified that she dropped the defendant off at Susan Park, (which was where Jessica Sanders resided), at approximately 8:20 p.m. Ms. Robinson admitted that she did not know where the defendant was at 8:50 p.m. that night.
The defendant testified that, on July 5, 2004, at approximately 5:00 p.m., his mother brought him to Wal-Mart and then dropped him off at his friend's house. After the defendant arrived at his friend's house, he called Sanders and went around the corner to her house. The defendant testified that he accompanied Sanders to her grandmother's house in Laplace, at approximately 5:45 p.m. to 6:00 p.m. After they returned, the defendant did not go anywhere until 12:30 a.m. or 1:00 a.m.
In addition, the defendant testified that on July 9, 2004 he was home until approximately 4:00 p.m. when he left to go to a friend's house. He explained that he stayed there until approximately 6:50 p.m. to 7:15 p.m. when he left and walked home to 221 North Sibley Street. The defendant asked his mother to bring him to Susan Park in Kenner. He indicated that, at approximately 7:50 p.m., she asked him to go and get some bread and put gas in the car. The defendant testified that he then went to an Amoco station[5] where he bought some bread and five dollars worth of gas from an Asian woman who was working there. After he finished, the defendant went directly back home to North Sibley Street. The defendant testified that his mother then brought him to Susan Park at approximately 8:00 p.m. The defendant denied robbing the convenience store on July 5th, and he denied attempting to rob it on July 9th. He believed that Bernheisel and Tran misidentified him. The defendant admitted telling Decker that he was unemployed from mid-June until July 15, 2004. He claimed that Decker tried to force him to admit to committing *863 the robberies, and that Decker and other officers threatened to physically harm him.
Detective Decker was called by the State as a rebuttal witness. He testified that none of the officers coerced or threatened the defendant. Detective Decker testified that the defendant told him that on July 5 and 9 of 2004, he was either at a friend's house or at his girlfriend's house in Susan Park. Detective Decker was unable to locate the defendant's friend to check the defendant's alibi because the defendant would not give him the friend's name and the defendant did not know the friend's address. The defendant also never told Detective Decker that on July 5 and 9 of 2004, he was with his mother.
According to Detective Decker, Ms. Robinson could not have provided an alibi for the defendant because, based on her testimony and the printout of the 911 call on July 9, 2004, the defendant was not with Robinson when the attempted robbery occurred at 8:02 p.m. Detective Decker further testified that defendant did not inform him that he was at the Airport Fuel Mart on July 5, 2004, between 7:50 p.m. and 8:05 p.m., when the robbery occurred because he would have definitely put that in his report.
In his first pro se allegation of error, the defendant argues that the trial court erred in denying the motion to suppress his identification because the identifications were impermissibly suggestive, which resulted in the likelihood of misidentification. The defendant also argues that he was denied due process and fair trial because the trial judge denied his motion to suppress the identification without a fair hearing, and the identification was later used in his trial. The defendant claims that the motion to suppress hearing was unfair because the trial judge did not allow a continuance.
The defendant contends that, even though Bernheisel and Tran testified that they knew the perpetrator, the eyewitnesses would not have been able to identify him without it being suggested to them. The defendant notes that Bernheisel and Tran did not know his name, where he lived, or positively identify him until unknown store patrons gave Bernheisel the information that the perpetrator lived next door to Parrot. The defendant claims that this made the identification suggestive. He contends that the victims would have been unable to identify the perpetrator without the information given by the patrons because Bernheisel and Tran were only able to see the perpetrator, who wore a bandana across his face, for a short period of time. The defendant notes that Bernheisel and Tran were only able to give a description of the perpetrator's weapon, clothing, weight, height, and race. According to the defendant, Bernheisel and Tran were unable to give a distinctive description, which positively identified him. The defendant also claims that the identification was suggestive because he was the only person from the neighborhood included in the lineup. The defendant suggests that the identifications made by Bernheisel and Tran were influenced by their belief that the perpetrator looked familiar and lived in the neighborhood.
At the motion to suppress hearing, Detective Decker testified that he investigated the armed robberies that occurred on July 5 and 9 of 2004 at the fuel mart. Detective Decker learned from a victim,[6] who was robbed at the store on both occasions, *864 that the same perpetrator committed both robberies. That victim gave Detective Decker a description of the perpetrator.[7] The victim informed him that on both occasions the perpetrator was armed and demanded money. On July 5, 2004, the victim gave the perpetrator the money after which the perpetrator fled. On July 9, 2004, when the victim was able to retrieve his own gun from behind the counter, the perpetrator ran. Detective Decker initially compiled a photographic lineup with Parrot after learning from a deputy that Parrot appeared to match the description. Detective Decker showed the photographic lineup to the victim. The victim informed him that he recognized Parrot from the neighborhood but that he was not the person who robbed him. After learning from at least one of the victims that the perpetrator lived next door to Parrot and performing a computer check, Detective Decker compiled a second photographic lineup containing the defendant's picture. Detective Decker showed the second photographic lineup to Tran, a victim in the second robbery, who positively identified the defendant. Detective Decker also showed a photographic lineup containing the defendant's picture to Bernheisel, a victim in both robberies.
After the testimony concluded, the trial court held open the motion to suppress identification hearing for defense witnesses to testify. On February 3, 2005, after the defense's subpoenaed witnesses, i.e., Tran, Bernheisel, and Detective Decker, failed to appear, the trial court denied the motion to suppress identification finding that there were no constitutional violations. On February 24, 2005, the first day of trial, the defendant requested that the trial judge re-open his motion to suppress identification to hear testimony from two witnesses. The trial court denied the defendant request for the reasons previously given.
In the present case, the defendant argues that he was denied due process and fair trial because the trial judge did not grant a continuance of the suppression hearing in order to allow the defense witnesses to testify.
The defendant has failed to brief this portion his assignment of error in regards to the trial judge's failure to grant a continuance of the motion to suppress hearing. "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Uniform Rules, Courts of Appeal, Rule 2-12.4. If a defendant merely asserts his position and fails to brief his position, i.e., fails to include an argument or any legal citation in support, the assertion presents nothing for review on appeal. State v. Lauff, 06-717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819, citing State v. Fernandez, 03-987, p. 9 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 770. Since, the defendant has not briefed this portion of his assigned error, in regard to the trial court's failure to grant a continuance of the motion to suppress hearing, there is nothing for this Court to review.
Next, the defendant argues that the trial court erred in denying the motion to suppress the identification because it was impermissibly suggestive, which resulted in the likelihood of misidentification. Specifically, he claims that the identifications were suggestive because at least one of the victims learned where he lived from patrons of the Airport Fuel Mart and because *865 he was the only person in the photographic lineup from the neighborhood.
A defendant has the burden of proof on a motion to suppress an out-of-court identification. LSA-C.Cr.P. art. 703(D). In challenging an identification procedure, the defendant must prove to the court that it was suggestive and that there was a substantial likelihood of misidentification. State v. Raines, 00-1941, p. 4 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833. An identification procedure is suggestive if the witness' attention is unduly focused on the defendant during the procedure. State v. Broadway, 96-2659, p. 14 (La.10/19/99), 753 So.2d 801, 812, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). When determining the constitutionality and consequent admissibility of an out-of-court identification procedure, the court must first make a determination of whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. State v. Jackson, 05-527, p. 10 (La.App. 5 Cir. 12/27/05), 919 So.2d 779, 786, citing Manson v. Brathwaite, supra. If the court finds that the police used an impermissibly suggestive procedure in obtaining the out-of-court identification, then the court must decide, under all the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Id. Even if the identification procedure is found to be suggestive, this alone does not violate due process. Rather, it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Raines, 00-1941 at pp. 4-5, 788 So.2d at 639.
The standard of review for identification procedures is fairness, and the linchpin in determining the admissibility of identification testimony is reliability. Id., citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. State v. Raines, 00-1941 at p. 5, 788 So.2d at 639. Any corrupting effect of a suggested identification procedure is to be weighed against these factors. Id. A court must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Id. An appellate court is not limited to the evidence adduced at the hearing on the motion; instead, it may also consider pertinent evidence given at trial, in determining whether the ruling on a defendant's motion to suppress is correct. State v. Raines, 00-1941 at p. 5, 788 So.2d at 639-40. A trial court's decision to deny a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Raines, 00-1941 at pp. 5-6, 788 So.2d at 640.
In the present case, both Tran and Bernheisel testified that they immediately recognized the defendant during the commission of the offenses as a regular customer. Tran remembered that the defendant accompanied two young girls into the store on several occasions, and that the defendant was a friend of the girls' brother. According to Tran, the defendant had been in the store as a customer on at least 50 prior occasions. Tran also gave a description of what the defendant wore that substantially matched the description given by Bernheisel. Bernheisel testified that he could almost see the defendant's *866 complete face during the armed robbery because the folded bandana only covered a small portion of his face. Bernheisel also recognized the defendant during the attempted armed robbery even though the defendant wore the bandana in a different fashion. Bernheisel was also able to remember the cigar brands bought by the defendant when he visited the store as a regular customer.
In addition, it appears that any information gained by Bernheisel about the defendant's residence in the neighborhood from the store's patrons did not affect the identifications. When presented with the first photographic lineup, both Bernheisel and Tran recognized a man from the neighborhood but informed Detective Decker that he was not the person who committed the robberies. However, when presented with the second photographic lineup, both Bernheisel and Tran positively identified the defendant. Both Bernheisel and Tran testified that they had no doubt in their minds about the identifications. In addition, the defendant has failed to provide any support for his assertion that there was no other person from the neighborhood in the second photographic lineup or that a picture of a person from the neighborhood would have made any difference, especially in light of the fact that both Bernheisel and Tran failed to identify a man from the neighborhood with similar characteristics in the first photographic lineup.
We find that the trial court did not err in denying the defendant's motion to suppress identification.
In his second pro se allegation of error, the defendant argues that that evidence of his identification was insufficient because it was suggestive and created the likelihood of misidentification.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Barnes, 98-932, p. 3 (La. App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Baker, 01-1397, p. 3 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id.
The evidence may be either direct or circumstantial. State v. Williams, 05-59, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Williams, 05-59 at p. 5, 904 So.2d at 833. Rather, the reviewing *867 court must evaluate the evidence in a light most favorable to the State, and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.
"Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64. A "`[d]angerous weapon' includes any . . . instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." LSA-R.S. 14:2. "An attempt occurs when the offender, `having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.'" State v. McGee, 04-963, p. 23 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 414, writ denied, 05-593 (La.5/20/05), 902 So.2d 1050.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue presented in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Peden, 04-71, pp. 7-8 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 940. (Citation omitted.)
In the present case, the defendant only argues that his identification as the perpetrator was insufficient to prove him guilty beyond a reasonable doubt. However, both Tran and Bernheisel testified that they immediately recognized the defendant during the commission of the offenses as a regular customer. Bernheisel and Tran both gave remarkably similar descriptions of the clothing worn by the defendant during the commission of the offenses. Bernheisel testified that he could almost see the defendant's complete face during the armed robbery because the folded bandana only covered a small portion of his face. Bernheisel also recognized the defendant during the attempted armed robbery even though the defendant wore the bandana in a different fashion.
We find that the State presented sufficient evidence, at trial, through the testimonies of Tran and Bernheisel for the jury to conclude that the defendant was the person who committed the offenses beyond a reasonable doubt.
In his counseled allegation of error, the defendant argues that the trial court erred in failing to grant his motion to reconsider sentence. The defendant claims that his sentence is excessive because he was sentenced at 18 years of age and has been pursuing rehabilitation, i.e., obtaining his G.E.D.[8] The State counters that the defendant's sentences are within the prescribed sentencing range and are similar to those imposed in other cases.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Crawford, 05-494, p. 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, *868 669. A sentence that is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering is unconstitutionally excessive, even if it within the statutory limits. State v. Jones, 05-735, p. 6 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, 1116, writ denied, 07-0151 (La.10/26/07), 966 So.2d 567; State v. Riche, 608 So.2d 639, 640 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La. 1993).
The trial court should consider the defendant's personal history, i.e., age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. State v. Crawford, 05-494 at p. 6, 922 So.2d at 669. A trial court is afforded great discretion in determining sentences and sentences within the statutory limit will not be set aside as excessive absent clear abuse of that broad discretion. Id.
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Taylor, 06-839, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179. If the record supports defendant's sentence, the appellate court shall not set aside the sentence for excessiveness. State v. Jones, 05-735 at p. 8, 924 So.2d at 1117; LSA-C.Cr.P. art. 881.4(D). The appellate court can look to the record for support of the defendant's sentence, even if a trial judge fails to set forth reasons for the sentence imposed. Id. Age is an insufficient justification for a downward departure in a sentence. State v. Hernandez, 02-892, p. 5 (La.App. 5 Cir. 1/28/03), 839 So.2d 281, 285.
The three factors that are considered in reviewing a trial court's sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. State v. Crawford, 05-494 at p. 8, 922 So.2d at 670. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Crawford, 05-494 at p. 8, 922 So.2d at 670-71.
The sentencing range for armed robbery is imprisonment "at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." LSA-R.S. 14:64(B). The maximum sentence the defendant could receive for attempted armed robbery was imprisonment at hard labor for not more than 49½ years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64(B) and LSA-R.S. 14:27(D)(3). See State v. Robicheaux, 03-1063, p. 8 (La. App. 5 Cir. 12/30/03), 865 So.2d 149, 153, writ denied, 04-0381 (La.6/25/04), 876 So.2d 830. "There is no statutory mandatory minimum sentence in cases involving attempted offenses under La. R.S. 14:27." State v. Burford, 39,610, p. 8 (La.App. 2 Cir. 5/11/05), 902 So.2d 1190, 1196, writ denied, 05-1573 (La.1/27/06), 922 So.2d 545. In this case, the defendant was sentenced to 25 years on each count to run concurrently. Therefore, the defendant received a mid-range sentence on his attempted armed robbery conviction and a below mid-range sentence on his armed robbery conviction. Both sentences are within the statutory guidelines.
In the present case, the defense requested a pre-sentence investigation, *869 which the trial court denied.[9] After waiving sentencing delays and before the defendant was sentenced, defense counsel asked the trial judge to impose a sentence below the 25 to 30 year range, in which the defendant's original sentence was imposed. The defendant asked that the trial judge take into consideration the defendant's youthful age of 18 years when the crimes were committed, his lack of a criminal history, and his efforts at rehabilitation, i.e., receipt of his GED and attendance in other classes. Thereafter the trial judge imposed a sentence of 25 years on each count. In State v. Hartwell, 03-1214 (La. App. 5 Cir. 1/27/04), 866 So.2d 899, writ denied, 04-0448 (La.6/25/04), 876 So.2d 832, the defendant claimed that his two concurrent terms of 35-years sentence for his armed robbery convictions were constitutionally excessive because he was a first offender and because the victims were not hurt during the encounter. State v. Hartwell, 03-1214 at p. 11, 866 So.2d at 906. This Court noted, "[a]rmed robbery is a serious offense against the person." This Court found that the imposed sentences for the defendant's armed robbery convictions were in the range approved by the Louisiana Supreme Court for first armed robbery offenders and, therefore, were not excessive. State v. Hartwell, 03-1214 at p. 12, 866 So.2d at 907. Compare also, State v. Adger, 30,215 (La.App. 2 Cir. 12/10/97), 707 So.2d 1000; State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4; State v. Burford, supra.
In the present case, the trial judge evidently took into account the mitigating considerations raised by the defendant, since defense counsel informed the trial judge of the considerations immediately prior to the imposition of the defendant's sentence. In addition, as the charged offenses suggest, the defendant was armed during the commission of the robbery and the attempted robbery. Therefore, the victims were placed in very grave danger and could have easily been killed. State v. Kennedy, 93-776, p. 14 (La.App. 5 Cir. 1/25/94), 631 So.2d 1195, 1203. Armed robbery is a most serious crime and should be dealt with very sternly. Id. Given the serious nature of these offenses, we find that the trial court did not abuse its discretion in imposing the sentences.
The defendant also requests an error patent review. We have review the record in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990) and find no errors which warrant our attention.
Accordingly, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Detective Michael Kavanaugh of the Jefferson Parish Sheriff's Office testified that he responded to the armed robbery call on July 5, 2004, at the Airport Fuel Mart located at 8701 Airline between North Bengal and Sibley Streets in Jefferson Parish. Detective Kavanaugh testified that one of the victims described the suspect as a black male. In addition, one of the victims told Detective Kavanaugh that he knew the suspect as a regular customer.
[2] Tran testified that the two girls lived on North Sibley. Tran also knew the brother of the two little girls, and that their brother was a friend of the defendant.
[3] Detective Decker testified that the 911 tape indicated that the Acura that sped off was traveling in the direction of North Sibley.
[4] Neither Bernheisel nor Tran observed any tattoos on defendant. Bernheisel testified that he never saw defendant's arms to see if there were any tattoos. Bernheisel testified that he did not see the defendants arms or hands on the dates of the robberies because he was looking at his face.
[5] It appears that the defendant mistakenly referred to the Airport Fuel Mart as an Amoco station because he described the store as the one he was accused of having robbed.
[6] It is clear from that record that Detective Decker is referring to Bernheisel, since Bernheisel was the only victim in both robberies.
[7] Both Tran and Bernheisel told Detective Decker that the perpetrator had "a bandana over his face" that fell, partially down allowing them to recognize him.
[8] In the present case, for the first time on appeal, the defendant suggests that the trial court failed to follow the sentencing guidelines in LSA-C.Cr.P. art. 894.1. Since the defendant failed to raise compliance with LSA-C.Cr.P. art. 894.1 in the trial court below or in his motion to reconsider sentence, he is precluded from raising this issue on appeal. State v. Wickem, 99-1261, p. 9 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 967-68, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
[9] In his brief, the defendant suggests that the trial judge's lack of consideration of mitigating factors is especially objectionable, since the trial judge denied his request for a pre-sentence investigation. "However, the Louisiana Supreme Court has held that a pre-sentence investigation is merely an aid to the court and not a right of the accused." State v. Jones, 05-735 at p. 8, 924 So.2d at 1117. "A defendant does not have an absolute right to demand the PSI [pre-sentence investigation]. . . ." State v. Perrilloux, 99-1314, p. 11 (La.App. 5 Cir. 5/17/00), 762 So.2d 198, 205 (citing State v. Lanieu, 98-1260, p. 8 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, 95, writ denied, 99-1259 (La. 10/8/99), 750 So.2d 962).